UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| WALTER D. HICKMAN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:10-CV-58 |
| | ) | (VARLAN/SHIRLEY) |
| SLOAN FLUID ACCESSORIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on defendant's Motion for Summary Judgment [Doc. 20]. Plaintiff filed a response in opposition, and defendant filed a reply [Docs. 25, 27]. For the reasons explained below, the Court denies defendant's motion.

**I.     Background and Relevant Facts**

Plaintiff Walter D. Hickman was born in 1946 [Doc. 25 ¶ 3]. After he finished high school, plaintiff joined the Army for four years, during which time he taught electronic warfare equipment repair [*Id.*]. Thereafter, he taught electronics at the "vo tech school" in Morristown, Tennessee, and then took a job selling electronic test equipment in 1973 [*Id.*]. Since 1973, plaintiff has been in sales, except for five years when he taught soldiers at Fort Gordon how to repair computer technology [*Id.*]. His primary sales experience has been in the field of electronics and automation equipment [*Id.* at ¶ 4].

On January 2, 2004, plaintiff was employed by defendant Sloan Fluid Accessories, Inc. [Doc. 20-2 p. 2; Doc. 25 ¶ 4]. Defendant "is in the business of selling pneumatic and

hydraulic components—i.e., air valves and power units" [Doc. 25 ¶ 1]. The company is owned by the CEO, Robert Franklin ("Franklin"), and his son, Rich Franklin, is the President [*Id.*]. Wayne Mangrum ("Mangrum") is the Vice President of Sales and Marketing, and he handles defendant's day-to-day operations [*Id.*].

Plaintiff began as an outside salesperson, operating out of the Knoxville, Tennessee office [*Id.* at ¶ 4]. He worked as an outside salesperson for three years, until the company created the position of automation team leader, "which in reality, is still a sales job" [*Id.* (alterations omitted)]. In September 2008, plaintiff's title was changed to "product specialist or applications engineer" [Doc. 20-2 p. 2; Doc. 25 ¶ 4]. The product specialist position involved "making joint sales calls with the rest of the outside sales force, doing sales support, helping them and selling products" and "supporting the outside sales team . . . with primarily presales support; helping them make sales of products; secondarily providing technical support to the customers on the product" [Doc. 25 ¶ 5 (alterations omitted)]. In particular, plaintiff was a product specialist for Omron, Ormec, Denso Roberts, Leutze, and Murr equipment [*Id.*]. Beginning in September 2008 until he was terminated, plaintiff's pay plan included commissions for sales of their products [*Id.*].

In early 2009, Franklin decided the company was not earning enough profit and gave Mangrum an "order to get the business in line" [Doc. 25 ¶ 6]. Mangrum developed a plan to do so, which included two steps: (1) to have all of the inside and support people work four days a week in the second quarter of 2009, and (2) to do away with the product specialists in September 2009 [*Id.*]. Mangrum met with plaintiff on or about September 29, 2009 and

informed him that he was terminated [*Id*. at ¶ 7]. Plaintiff was 62 years old [Doc. 1 ¶ 11; Doc. 20-2 p. 2]. It is undisputed that Mangrum made the decision to terminate plaintiff, and he informed plaintiff of his decision without explanation [Doc. 25 ¶ 7].

Around the same time, Mangrum was in the process of transferring a younger, inside salesperson, Mark Sammons ("Sammons"), to the soon-to-be vacant outside sales position belonging to Larry White ("White") [*Id*. at ¶ 15]. White announced in June or July 2009 that he was going to retire or cut back on his work [*Id*.]. White's outside sales territory consisted of accounts from "Chattanooga to Surgionsville, including Clinton, Knoxville, Roane County and Huntsville" [*Id*. (quotation mark omitted)]. Mangrum announced that Sammons would be taking over White's outside sales territory on September 15, 2009, two weeks before plaintiff's termination [*Id*. at ¶ 16].

Plaintiff commenced this action on or about February 16, 2010, asserting age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and the Tennessee Human Rights Act ("THRA") [Doc. 1]. He claims he was terminated as a result of his age and that defendant failed to transfer him to positions he was qualified to perform because of his age [Docs. 1, 25]. Defendant's motion for summary judgment is based on the assertion that plaintiff cannot establish a prima facie case because he "has failed to show that, upon his termination by [defendant], he was replaced by someone outside the protected age bracket or significantly younger than he, or that anyone was hired or reassigned to perform [his] employment duties" [Doc. 20-2].

3

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or

determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**III.    Analysis**

The ADEA states that it is unlawful for an employer "to fail to refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The relevant part of the THRA states that it is discriminatory practice for an employer to "[f]ail or refuse to hire or discharge any person or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age, or national group." Tenn. Code Ann. § 4-21-401(a)(1).

The Tennessee legislature has made clear that the purpose of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964 . . . and [the ADEA] of 1967, as amended." Tenn. Code Ann. § 4-21-101(a). The Court therefore will apply the same analysis to plaintiff's age-based discrimination claim brought under the THRA as plaintiff's age-based discrimination claim brought under the ADEA. *Bender v. Hecht's Dep't Stores,* 455 F.3d 612, 620 (6th Cir. 2006)

5

(applying the same analysis to an age-based discrimination claim brought under the THRA as an age-based discrimination claim brought under the ADEA); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) ("Tennessee courts have 'looked to federal case law applying the provisions of the federal anti-discrimination statues as the baseline for interpreting and applying' the [THRA].") (citation omitted).

A plaintiff "may establish a claim under the ADEA by offering either direct or circumstantial evidence of age discrimination." *Grubb v. YSK Corp.*, 401 F. App'x 104, 113 (6th Cir. 2010) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009) (citing *Wexler*, 317 F.3d at 570). Circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (citation omitted). Regardless of whether a plaintiff proves his claim through direct or circumstantial evidence, the burden of persuasion remains on him to demonstrate "by a preponderance of the evidence [ ] that age was the 'but-for' cause of the challenged adverse

employment action." *Gross v. FBL Fin. Servs.*, — U.S. —, —, 129 S. Ct. 2343, 2351(2009); *Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010).[1]

Plaintiff asserts that the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), is inapplicable if he can demonstrate direct evidence of unlawful discrimination. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). The Court agrees, especially given that the Court of Appeals for the Sixth Circuit recently stated that *Gross* overrules the Circuit's ADEA precedent applying Title VII's burden-shifting framework if the plaintiff produces direct evidence of age discrimination. *Geiger*, 579 F.3d at 621.

To the extent plaintiff cannot produce direct evidence of age discrimination, however, the Court must analyze the circumstantial evidence under the burden-shifting framework articulated in *McDonnell Douglas*.[2] *See, e.g. Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410–11 (6th Cir. 2008) (applying the burden-shifting framework to an ADEA claim). Under this framework, a plaintiff must first establish a prima facie case. *See*

---

[1]Plaintiff asserts that the THRA uses a lower "determining factor" standard [Doc. 25]. The Court notes, however, that a recent opinion from the Court of Appeals for the Sixth Circuit and two recent opinions from this district, including one authored by this Judge, have applied the *Gross* "but-for" standard to claims under both the ADEA and the THRA. *See Harris*, 594 F.3d at 485 n.7; *Cross v. Sbarro Am., Inc.*, No. 1:09-CV-275, 2011 WL 572415, at *10 (E.D. Tenn. Feb. 15, 2011); *Blandford v. Exxon Mobil Corp.*, No. 3:08-CV-394, 2010 WL 2270884, at *2 (E.D. Tenn. June 3, 2010).

[2]The United States Supreme Court has not held that the *McDonnell Douglas* analysis applies to ADEA cases, but the Court of Appeals for the Sixth Circuit has held that ADEA claims based upon circumstantial evidence should be analyzed under that framework. *See Geiger*, 579 F.3d at 621.

*McDonnell Douglas*, 411 U.S. at 802; *see, e.g., Martin*, 548 F.3d at 410–11. Once the plaintiff has established a prima facie case, then the burden shifts to the defendant to "articulate a nondiscriminatory reason for its action." *Harris*, 594 F.3d at 485. If the defendant makes the appropriate showing, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was a pretext for discrimination. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–55 (1981).

### A. Plaintiff's Termination Claim

Plaintiff submits that direct evidence supports his claim that he was terminated because of his age. In particular, he relies on statements Mangrum made concerning the termination of plaintiff to representatives of companies with whom defendant conducted business.[3]

The first is a statement Mangrum made to Steven Rastberger, a regional sales manager for Omron [Doc. 25 ¶ 23]. Defendant distributes Omron's automation equipment, and Rastberger knew plaintiff from his work with defendant and another company [*Id.*]. Rastberger learned about plaintiff's termination from one of his employees, and, on October 13, 2009, Rastberger spoke with Mangrum to discuss defendant's future plans for either replacing plaintiff or continuing as an Omron distributor without a replacement [*Id.* at ¶¶ 24–25]. Rastberger testified as follows regarding that conversation:

---

[3]Defendant denies that Mangrum made these statements, but treats them as true for purposes of the motion for summary judgment [Doc. 27].

> Q: Did Mr. Mangrum make a comment to you about why Mr. Hickman had been terminated?
> A: Yes, sir.
> Q: What did he say to you about that?
> A: He told me he was looking for someone younger with more spunk.

[*Id*. at ¶ 25].

The second is the statement Mangrum made to Matthew Morrow, a regional sales manager for Ormec [*Id*. ¶ 26]. Defendant once was an Ormec distributor [*Id*. at ¶ 26]. Morrow met plaintiff through plaintiff's employment with defendant, and plaintiff called Morrow to inform him that he had been terminated [*Id*. at ¶¶ 26–27]. Morrow met with Mangrum about the future of Ormec's relationship with defendant on October 28 or 29, 2009 at Mangrum's office in Nashville, Tennessee [*Id*. at ¶ 27]. Morrow testified that, during the meeting, Mangrum discussed plaintiff's termination:

> Q: Did Mr. Mangrum make any comments to you during the meeting about why Mr. Hickman had been terminated?
> A: Yes.
> Q: What did he say?
> A: He told me it was his experience that the - - the older sales engineers that were working for Sloan were slower to adopt the newer technologies in the market and that he saw Sloan moving away from some of the more commodity products that were lower margin moving toward the higher-tech products where they could get a higher margin for the product and that he had concerns that you know, older salespeople wouldn't make the transition very well.
> Q: Did he mention how he expected to replace Mr. Hickman?
> A: He - - he said that their strategy going forward was going to be to actively bring in younger engineers that would be more likely to adopt the - - new technologies that were out on the market today.

[*Id*.].

Again, direct evidence is evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger*, 579 F.3d at 620 (citing *Wexler*, 317 F.3d at 570). "For example, an actual statement by an employer 'proclaiming his or her . . . animus' constitutes direct evidence of age discrimination." *Blaney v. Cengage Learning, Inc.*, No. 1:09-CV-934-HJW, 2011 WL 1532032, at *4 (S.D. Ohio Apr. 22, 2011) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998)). An "isolated, ambiguous, or abstract comment," however, "will not suffice." *Id.* (citing *Coburn v. Rockwell Automation, Inc.*, 238 F. App'x 112, 117–18 (6th Cir. 2007)) (quotation marks omitted). Statements of age bias are evaluated by considering:

> (1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.

*Id.* (citing *Morgan v. New York Life Ins. Co.*, 559 F.3d 425, 432 (6th Cir. 2009)).

Considering these factors, it is undisputed that Mangrum made the decision to terminate plaintiff. His statements to Rastberger and Morrow were related to the decision-making process and within the scope of his employment. Mangrum also made the statements within approximately one month of plaintiff's termination. In addition, the statements are not vague, ambiguous or isolated; rather, if believed, they provide evidence that plaintiff's age was a motivating factor in Mangrum's decision to terminate him. *Accord Johnson v. United Rentals, Inc.*, No. 1:09-CV-167, 2010 WL 1981295, *4–5 (W.D. Mich. May 17, 2010) (denying summary judgment because plaintiff produced direct evidence of age

discrimination, specifically statements made by upper-level management employees that employees such as plaintiff were "too old," and "should be [replaced] . . . with young folks"). The Court therefore finds that plaintiff has produced direct evidence that, if believed, could compel the conclusion that age was the "but-for" cause of his termination.

B. **Plaintiff's Failure to Transfer Claim**

Plaintiff argues that defendant's motion for summary judgment focuses only on plaintiff's termination claim, and does not address plaintiff's failure to transfer claim [Doc. 25]. Plaintiff therefore submits that the Court cannot dismiss the failure to transfer claim [*Id.*]. In support, plaintiff relies upon *Whited v. Community Bank of the Cumberlands, Inc.*, No. 2-08-0061, 2010 U.S. Dist. LEXIS 14276 (M.D. Tenn. Feb. 18, 2010), where the court allowed the plaintiff's retaliation claim to survive because such was not addressed in the defendant's motion for summary judgment.

Although defendant, in its reply brief, asserts two arguments why plaintiff's failure to transfer claim should be dismissed—because the denial of a lateral transfer is not an adverse employment action and because plaintiff fails to demonstrate he was replaced by a younger person—a review of defendant's opening brief reveals that defendant focuses solely on the plaintiff's termination claim and fails entirely to address the transfer claim [*See* Doc. 20-2]. Accordingly, the Court disregards defendant's arguments regarding the failure to transfer claim.[4] It is well settled that a movant cannot raise new issues for the first time in

---

[4] The Court notes that it considered all other aspects of defendant's reply brief.

a reply brief because consideration of such issues "deprives the non-moving party of its opportunity to address the new arguments." *Cooper v. Shelby County*, No. 07-2283, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010) (collecting Sixth Circuit and district court cases discussing this principle). Indeed, "reply briefs are not necessary and are not required by Court." E.D.TN. LR 7.1(c).

**IV.    Conclusion**

For the reasons explained above, the Court hereby **DENIES** defendant's Motion for Summary Judgment [Doc. 20].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE
